UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| VIRGINIA CORDER, | ) | |
| | ) | |
| Plaintiff,[1] | ) | |
| | ) | No. 6:19-CV-273-REW |
| v. | ) | |
| | ) | |
| ETHICON, INC., et al., | ) | OPINION & ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

A little more than 13 years ago, a gynecologist told a struggling Virginia Corder that choosing Ethicon's pelvic mesh products would be "the best thing that would ever happen" to her. Corder took that advice and signed on for surgical implantation of two Ethicon devices. Per Corder, what followed were years of debilitating complications and removal surgery. Corder blames Ethicon and filed this suit to prove recover for her harms.

## I.      BACKGROUND

Defendant Ethicon, Inc., a Johnson & Johnson subsidiary,[2] manufactured, marketed, and sold pelvic mesh products aimed primarily at the treatment of female pelvic organ prolapse and stress urinary incontinence. In 2007, Plaintiff Virginia Corder, suffering from cystocele[3] and

---

[1] Because Defendants' motion does not challenge consortium-Plaintiff Larry Corder's lone claim, this ruling concerns only Virginia Corder.

[2] The Court refers to the defense, Ethicon however named and Johnson & Johnson, collectively as "Defendants" or "Ethicon."

[3] Per the Cleveland Clinic, "a prolapsed, herniated, dropped or fallen bladder[.]" *Cystocele*, https://my.clevelandclinic.org/health/diseases/15468-cystocele-fallen-bladder (last visited July 7, 2020). Plaintiff's response brief also alleges that Corder suffered from "stress urinary incontinence[.]" DE 54 at 1. However, the documents Corder submitted in conjunction with her

urinary retention, consulted with her gynecologist, Dr. Kimberly Bush, regarding treatment options. *See* DE 5 at 6 (Pl.'s Fact Sheet).[4] Corder, herself a registered nurse, inquired about an "old fashioned" bladder tack procedure—involving use of the patient's own tissue to surgically "tack up" (via sutures) the prolapsed bladder. Corder Dep. at 142–43. However, Dr. Bush advised that Ethicon's Prolift+M and TVT-SECUR implants were the better solution. Indeed, Bush confidently predicted that implanting Ethicon's devices would be "the best thing that would ever happen to" Corder. *Id.* After reviewing an Ethicon pamphlet (supplied by Dr. Bush), and "trust[ing]" her gynecologist's recommendation, *id.*, Corder chose to go with Defendants' products. Dr. Bush surgically implanted the devices on March 30, 2007. DE 52-1 at 3.

Unfortunately, the mesh implants did not, as Corder tells it, prove the boon that Bush forecasted. Per Plaintiff, the implants' effects were numerous and uniformly negative. Among other complications, Corder claims: pain in multiple areas (abdomen, low back, hip), incontinence (urinary and bowel), loss of sensation, abscesses, bleeding, inability to have (or pain during) intercourse, urinary tract infections, cloudy vision, bloody discharge, and bladder spasms. DE 5 at 7; Corder Dep. at 66–67. Plaintiff claims these symptoms began appearing "directly after" her surgery and that they persisted, at least in part, through her claim date, nearly a decade post-op. DE 5 at 8.

Dr. Bush advised Corder that her post-surgery symptoms "were normal[.]" *Id.* However, Corder "suspected" that the implants were the cause of her maladies. And, a 2016 examination (by

---

originating MDL pleading appear to reject a pre-surgical incontinence diagnosis. *See* DE 5 at 6; DE 6 at 1.

[4] Though the docketed fact sheet does not include an attached verification, the subsequent entry includes as its final page a sworn declaration of veracity concerning "the final copy of this Plaintiff Fact Sheet[.]" DE 6 at 6. Given document pagination, (and the preceding verification concerning the DE 6 "Plaintiff Profile Form," *id.* at 5) the Court reasonably infers that Corder verified the fact sheet and that the attachment was misfiled or mis-docketed. Ethicon makes no issue of this.

Dr. Donna Nall) revealed "a wad of mesh and erosion" that confirmed Plaintiff's suspicions. *Id.* at 8, 13. The examining physician referred Corder to Dr. Rudolph Tovar for a June 3, 2016, removal operation. *Id.* at 8, 12. Dr. Tovar was able to remove only parts of the mesh because, per Plaintiff, portions were inextricably fused with Corder's "tendons and pelvic region." *Id.* at 7.

Plaintiff, seeking to hold Ethicon liable under various theories, filed suit on November 16, 2016. *See* DE 1 (Short Form Complaint). Corder joined hundreds of other Ethicon-product plaintiffs in a Southern District of West Virginia hosted MDL. Following initial processing, the MDL Court transferred this matter to this District for final resolution. *See* DE 40 (Transfer Order).

Ethicon's motion for partial summary judgment now pends. DE 52. Plaintiff brings 18 claims. *See* DE 1 at 4–5 (asserting Counts I–XVIII of the operative master complaint); DE 42-1 (Am. Master Compl.). Defendants' motion challenges eleven of Corder's theories, including: strict liability based on failure to warn, manufacturing and/or product defects (Counts II–IV, DE 42-1 ¶¶ 95–114), fraud (Count VI, *id.* ¶¶ 119–47), fraudulent concealment (Count VII, *id.* ¶¶ 148–56), constructive fraud (Count VIII, *id.* ¶¶ 157–64), negligent misrepresentation (Count IX, *id.* ¶¶ 165–69), express and implied warranty breaches (Count XI & XII, *id.* ¶¶ 174–96), violation of consumer protection laws (Count XIII, *id.* ¶¶ 197–215), and unjust enrichment (Count XV, *id.* ¶¶ 221–25). The motion—fully briefed, *see* DE 54 (Resp.), DE 55 (Reply)[5]—stands ripe for review. For the following reasons, and under the applicable standards, the Court finds Defendants' requests only partly warranted. Plaintiff abandons one claim (Count II), another is unnecessarily redundant (Count IV), and three others (Counts XI–XIII) are fatally flawed. The balance of the claim slate survives Ethicon's Rule 56 challenge on the terms here stated.

---

[5] Plus, supplemental authority filings. *See* DE 56, 64, 66 & 68.

## II.    APPLICABLE STANDARDS

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the

nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" fact dispute exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

## III.   ANALYSIS

### *Preliminary Matters*

Before turning to the disputed claims, a few initial notes. First, Plaintiff has conceded that Count II should be dismissed; the Court sees no need for substantive analysis of that abandoned claim. Second, the parties agree that substantive Kentucky law applies in this diversity case; the Court, accordingly, undertakes no independent choice-of-law analysis. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). Finally, the Court notes that Defendants' motion attacks Corder's claims on discrete, largely legal bases. Ethicon, for purposes of this motion, does not challenge Plaintiff's ability to prove factually, *e.g.*, that Defendants' products were defective or the cause of her injuries. The Court, for purposes of the present Rule 56 analysis alone, accepts as provable (to a rationale decider) unchallenged aspects of Corder's theories.

*Strict Liability – Failure to Warn*

Undisputed, for now, is Corder's claim that Defendants failed to warn of potential "chronic long term infection, urinary retention, mesh exposure, dyspnea and vaginal pain" risks stemming from implantation of Ethicon's pelvic mesh products. DE 54-1 ¶ 8. Ethicon, however, argues that Corder lacks proof, as Kentucky formulates the tort, causally linking deficient warning contentions (Count III) to claimed injuries. DE 53 at 4–5.

For products liability claims, Kentucky has adopted the Restatement (Second) of Torts § 402A.[6] *See Dealers Transp. Co. v. Battery Distrib. Co.*, 402 S.W.2d 441, 446–47 (Ky. 1965). Section 402A provides liability for injuries proximately caused by a product manufactured in a "defective condition unreasonably dangerous[.]" *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 536 (6th Cir. 1995). "Bearing on th[is] question . . . are factors such as the feasibility of making the product safer, the patency of the danger of the product, the warnings and instructions given, any subsequent maintenance or repair of the product, misuse of the product and the product's inherently unsafe characteristics." *Id.* "[A] manufacturer is presumed to know the qualities, the characteristics and the actual condition of the product at the time of sale[.]" *Id.* Ultimately, "the relevant inquiry is 'whether the product creates such a risk of an accident of the general nature of

---

[6] Section 402A provides:

    (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

        (a) the seller is engaged in the business of selling such a product, and

        (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

    (2) The rule stated in Subsection (1) applies although

        (a) the seller has exercised all possible care in the preparation and sale of his product, and

        (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

6

the one in question that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" *Id.* (quoting *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780 (Ky. 1984)).

For a Kentucky products liability claim predicated on deficient warning, a plaintiff must establish that: (1) the defendant had a duty to warn of the product's alleged dangers; (2) provided warnings were inadequate; and (3) warning inadequacy proximately caused the plaintiff's injuries. *See Stewart v. Gen. Motors Corp.*, 102 F. App'x 961, 964 (6th Cir. 2004); *see also Morales*, 71 F.3d at 536 ("[T]he character of warnings that accompany the product is generally an evidentiary consideration in deciding whether a product is unreasonably unsafe."); *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976). A "manufacturer has a duty to warn . . . of any dangers in its product (other than those that are open or obvious)." *Montgomery Elevator*, 676 S.W.2d at 782 (quoting *Minert v. Harsco Corp.*, 614 P.2d 686 (Wash. 1980)). And, a plaintiff showing that a manufacturer "knew or should have known of the inherent dangerousness of the product" may establish breach of the warning duty with proof that the manufacturer "failed to 'accompany [the product] with the quantum of warning which would be calculated to adequately guard against the inherent danger.'" *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 79 (Ky. 2010) (quoting *Post v. Am. Cleaning Equip. Corp.*, 437 S.W.2d 516, 520 (Ky. 1968)). As to the final element, "a plaintiff has the burden of establishing causation[,]" which Kentucky law defines "by the substantial factor test: was the defendant's conduct a substantial factor in bringing about plaintiff's harm?" *Morales*, 71 F.3d at 537.

The learned-intermediary rule, which Kentucky adopted in 2004, creates an analytical wrinkle. It provides "an exception to the general rule that a manufacturer's duty to warn of any risks or dangers inherent in the product runs to the ultimate consumer." *Larkin v. Pfizer, Inc.*, 153

S.W.3d 758, 762 (Ky. 2004). Applied, the rule defines the target for a manufacturer's duty to "warn about risks attendant to the use of . . . medical devices"; it requires adequate "warnings directed to health-care providers and not to patients." *Id.* (quotation marks omitted). Nonetheless, warnings "must still be adequate." *Id.* at 764. The Court expressly adopted § 6(d) of the Restatement (Third) of Torts: Products Liability. Per *Larkin*, "Thus, providing an adequate warning to the prescribing physician relieves the manufacturer of its duty to warn the patient regardless of how or if the physician warns the patient." 153 S.W.3d at 765.

Defendants contend that Plaintiff fatally failed to elicit testimony from the implanting physician, Dr. Bush, stating that a different or additional warning would have led to a different recommended course of treatment. DE 53 at 4–5. Put differently, the defense essentially argues that direct evidence from the obligatory caution recipient (and learned intermediary) substantiating the impact of allegedly inadequate warnings is a mandatory predicate to prove causation. At least

8

in this case, the Court disagrees.[7] Under Kentucky law, "[c]ausation is an element which may be proved by circumstantial evidence," and proximate cause is typically "a question of fact for a jury." *Morales*, 71 F.3d at 537. "[T]he essence of the test concerning the sufficiency of plaintiff's circumstantial evidence concerning causation is that the proof must be sufficient to tilt the balance from 'possibility' to 'probability.'" *Perkins v. Trailco Mfg. & Sales Co.*, 613 S.W.2d 855, 857 (Ky. 1981) (some quotation marks omitted). Post adoption of the learned-intermediary rule, Kentucky continues to apply the "substantial factor" test for legal causation in products liability claims. *CertainTeed*, 330 S.W.3d at 77.

In the pending motion, Defendants do not dispute that a reasonable decider could conclude that the warnings it provided Dr. Bush were inadequate. Corder has attested that if she were apprised of all alleged complications stemming from Defendants' products, she would not have elected implantation. True, as Defendants suggest, Corder's representations are not **direct**

---

[7] Taken to its logical limit, Defendants' proposed approach would immunize malicious manufacturers in absurd circumstances. For instance, consider an omitted warning that a medication carried a 99% chance of causing death. If an unwarned provider pre-deceased his patient and, thus, could not directly state how he would have reacted to proper warnings, application of Ethicon's rationale would foreclose failure-to-warn recovery for a deceased patient's estate. Surely a reasonable juror could infer that a properly warned physician would not have prescribed such a risky treatment without the prescriber's confirming testimony. Some cases address this gap by proof of what a "reasonable" learned intermediary, properly warned, would do. *See, e.g.*, *Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 212 (5th Cir. 2008) ("[A] plaintiff may satisfy the burden of demonstrating warning causation by producing either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded."). Several jurisdictions require, as causal proof, that the intermediary signal a change if properly warned. *See, e.g.*, *Bennett v. Madakasira*, 821 So. 2d 794, 807 (Miss. 2002), *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So. 3d 1116 (Miss. 2010) ("[P]laintiffs must establish, by the preponderance of the evidence, . . . that an adequate warning would have prevented the treating physician from administering the drug[.]"). Ethicon, for the first time as a supplemental authority, cites only one such case, and makes no effort to explain why Kentucky would follow the Florida law applied in the referenced decision. *See* DE 66 & 66-1. Ethicon's contention is, strictly, that only proof from or concerning the specific prescribing physician would suffice. Kentucky has not said that.

evidence that different warnings would have changed Dr. Bush's mind. Yet, Kentucky permits a circumstantial causation showing. Proof indicating how one medical professional, like Corder (again, an RN), would have responded to full warnings arguably is somewhat probative of how another might react. Further, Defendants fail to explain why a juror could not reasonably consider the nature and number of allegedly (for present purposes, undisputedly) omitted warnings to assess whether Dr. Bush would, if adequately informed, have changed the treatment plan (even without her explicitly saying so). *See In re Fosamax Prod. Liab. Litig.*, 688 F. Supp. 2d 259, 265 (S.D.N.Y. 2010) ("Under Indiana law, [ ] a plaintiff alleging a failure to warn claim has the benefit of a 'heeding presumption,' meaning that there is a presumption that an adequate warning would have been read and heeded.").[8]

Defendants chastise Plaintiff for not deposing Dr. Bush. But the lack of testimony from Dr. Bush could cut either way. Certainly, a reasonable juror could infer from the silent record that Dr. Bush would have, knowing all the risks, continued to tout Ethicon's products. But, no direct evidence supports that conclusion either; after all, Ethicon also declined to depose Dr. Bush.[9]

---

[8] *Cf. Hippocratic Oath*, National Library of Medicine, https://www.nlm.nih.gov/hmd/greek/greek_oath.html (last visited July 10, 2020) ("I will do no harm or injustice to [my patients.]")

[9] This distinguishes cases like *Cutter v. Ethicon, Inc.*, where the implanting surgeon "testified that he did not consult [manufacturer-supplied] materials to obtain information about the risks of implanting the Prolift device . . . and, in fact, has never relied on them for such information." No. 5:19-cv-443-DCR, 2020 WL 109809, at *8 (E.D. Ky. Jan. 9, 2020).

The Court is not convinced that here Corder must prove that supplemented warnings would have changed Dr. Bush's recommendation to establish the necessary causal nexus.[10] Corder testified that Dr. Bush, though ultimately pushing Ethicon products, discussed possible alternative procedures. *See* Corder Dep. at 142. Dr. Bush provided Plaintiff Ethicon informational materials (and Corder reviewed them). *Id.* at 144–45. From these events, a juror could rationally conclude that Bush would have passed along additional integral warnings communicated by Ethicon. The same juror could reasonably accept Plaintiff's claim that if she were fully informed, she would have opted for a different procedure (again, a topic broached with Dr. Bush despite the allegedly deficient warnings). This type of inform-the-informer rationale partly animates the learned-intermediary rule:

> [H]ealth-care professionals are in a position to understand the significance of the risks involved and to assess the relative advantages and disadvantages of a given form of prescription-based therapy. The duty then devolves on the health-care provider to supply to the patient such information as is deemed appropriate under the circumstances **so that the patient can make an informed choice** as to therapy.

*Larkin*, 153 S.W.3d at 763 (citation omitted) (emphasis added); *cf.* KRS 304.40-320(2) (requiring, as an "informed consent" predicate, that the health care provider convey information sufficient for a reasonable individual to generally understand the "acceptable alternative procedures or treatments and substantial risks and hazards inherent in the proposed treatment or procedures").

---

[10] Some states make such proof mandatory. *See In re Fosamax*, 688 F. Supp. 2d at 265 (collecting cases). Defendants, however, cite no precedent indicating that Kentucky circumscribes permissible causation proof in this way. *Clark v. Danek Medical, Inc.*, which Ethicon cites in support, *see* DE 53 at 4, certainly does not support the proposition. No. 3:94-CV-634-H, 1999 WL 613316, at *5 (W.D. Ky. Mar. 29, 1999). Indeed, *Clark* expressly recognized an alternative causal route: "[A]fter hearing of the risks associated with [the product], [plaintiff] might have decided against the operation or he might have requested a different implant." 1999 WL 613316, at *5. Ethicon's supplemental authority, including an application of Florida law, is unhelpful to the analysis for Corder's Kentucky claim. *See* DE 66-1.

To be clear, the Court is not suggesting that a provider's decision whether or not to fully inform a patient has any relevance to the question of breach. The learned-intermediary rule makes clear that a manufacturer's provision of adequate warnings to a treating physician forecloses warning-based liability whether or not the provider fully conveys them to the end recipient. *See Larkin*, 153 S.W.3d at 765. The Court readily acknowledges the causation law from other jurisdictions and *Clark v. Danek*'s partial embrace. Truly, Corder has the burden on proximate cause, and any warning defect, to support relief, must have caused her injury.

Part of the Court's difficulty is the limited field of what the parties cited and how they argued. Each side discusses only *Larkin* and *Clark*[11] as Kentucky authority germane to the learned-intermediary causal issue. Although *Larkin* adopted § 6(d), it also left the contours of the doctrine open for later definition. *See* 153 S.W.3d at 770. One of the open questions in the Restatement commentary is the effect of direct-to-consumer communications. To wit:

> Those who assert the need for adequate warnings directly to consumers contend that manufacturers that communicate directly with consumers should not escape liability simply because the decision to prescribe the drug was made by the health-care provider. Proponents of the learned intermediary rule argue that, notwithstanding direct communications to the consumer, drugs cannot be dispensed unless a health-care provider makes an individualized decision that a drug is appropriate for a particular patient, and that it is for the health-care provider to decide which risks are relevant to the particular patient. The Institute leaves to *developing case law* whether exceptions to the learned intermediary rule in these or other situations should be recognized.

Restatement (Third) of Torts: Prod. Liab. § 6 cmt. e (emphasis added). Ethicon, as movant, does not discuss the effect, if any, on communications directed toward Corder[12] by Defendants and does

---

[11] *Clark* preceded Kentucky's adoption of the learned-intermediary doctrine, but the case predicted its application, functionally applied the rule, and purported to make the same type of causation analysis Ethicon here puts forward. 1999 WL 613316, at *5–6. *Larkin* did not in any manner discuss proximate cause as impacted by the learned-intermediary theory.

[12] Though Ethicon may have given the pamphlet directly to Bush, the record leaves no doubt as to the intended ultimate recipient.

not offer Kentucky case law on the causal requirements in a situation of this type. Defendants may be right, but they have the burden, as movant, to properly stake out the legal ground. Citing *Larkin* and *Clark* alone does not answer the question and will not suffice.

The Ethicon pamphlet in the record, which Plaintiff avers she read and relied on in making the surgical choice, expressly both touted the Ethicon product AND listed risks for the consumer's consideration. The document purported to communicate "a complete description of risks" via the "attached product information." DE 54-1 at 9. This was all a part of the patient's calculus, expressed by Ethicon as whether the TVT product "Is . . . right for me?" *Id.* So, having no proof from the physician's perspective hurts the proximate cause case under one *Clark* causal theory, but because Corder had (from Bush)[13] and relied on an allegedly thorough risk description from company to consumer, and because she avers that an accurate risk recital would have changed *her* mind about the surgery choice, the case survives summary judgment on failure to warn. *Clark*, 1999 WL 613316, at *5 ("after hearing of the risks[,] . . . Clark might have decided against the operation or he might have requested a different implant"). The Court accepts as true that full and accurate warnings, if presented to Corder, would have prompted Corder to alter course and avoid

---

[13] Bush discussed options with Corder and provided Corder Ethicon's authored promotional (including risk advisory) materials. Corder Dep. at 145; DE 54-1. She believes Bush also likely covered warnings. Even if Bush would not have changed recommendations, the record suggests Corder would have received and reacted differently to comprehensive and accurate warnings. Kentucky requires communication of "substantial risks and hazards inherent in the proposed treatment" as a basis for informed consent. *Larkin*, 153 S.W.3d at 769–70 (citing informed-consent statute and describing warning duty as "any risks or dangers inherent in proposed treatment"); *see also Sargent v. Shaffer*, 467 S.W.3d 198, 207–08 (Ky. 2015) ("Not only must the physician's" disclosure be "in accordance with the accepted standard of medical practice[,] . . . the information imparted by the physician [must] be stated so as to provide a **reasonable individual** with a general understanding of the procedure[,] any acceptable alternatives[, and] the substantial risks and hazards inherent in the proposed treatment or procedures which are recognized among other health care providers who perform similar treatments or procedures." (internal alternations and quotation marks omitted) (emphasis added)).

the Ethicon product. The Court is not convinced, on the legal and factual argument presented, that there is no genuine dispute under Kentucky law.

*Strict Liability – Defective Product*

Defendants' sole argument for summary judgment on Plaintiff's defective-product theory (Count IV) is that Kentucky recognizes no such strict liability cause of action. *See* DE 53 at 5. Again, Kentucky holds manufacturers strictly liable for injuries stemming from products distributed "in a defective condition unreasonably dangerous to the user or consumer[.]" *Montgomery Elevator*, 676 S.W.2d at 780. And, the ultimate "question is whether the product creates such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." *Id.* (emphasis and internal quotation marks omitted). A plaintiff may prove such a breach "in a number of ways[.]" *CertainTeed*, 330 S.W.3d at 79. And, "the patency of the danger of the product, . . . and the product's inherently unsafe characteristics" are recognized factors. *Morales*, 71 F.3d at 536. Defective design, defective manufacturing, and failure to warn are the theories marshaled to establish breach in products liability cases. As Kentucky's high court put it, "[t]he sole question in a products liability case is whether the product is defective[.]" *Montgomery Elevator*, 676 S.W.2d at 782. Plaintiff's defective-product claim squarely confronts that question. Yet, Count IV seems redundant to Counts III & V. The Court sees no distinct theory, so will grant the motion while preserving both persisting failure-to-warn and design defect theories. Plaintiff, calling this "symantics [sic]," confirms that "[t]he design defect and the failure to warn are what demonstrates [sic] the defendant's products are unreasonably dangerous[.]" DE 54 at 5.

*Fraud and Related Theories*

Defendants challenge Plaintiff's common-law fraud, fraudulent concealment, constructive fraud, and negligent misrepresentation theories (Counts VI–IX) as improper efforts to end run the learned-intermediary rule. *See* DE 53 at 5–6. For what is essentially an argument about competing policies, Defendants' indiscriminate treatment of distinct theories is particularly unhelpful.

A Kentucky fraud claim has six elements:

> a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). By contrast, "a fraudulent-concealment (fraud by omission) claim is grounded in a duty to disclose. In particular, the plaintiff must show 1) a duty to disclose the material fact at issue, 2) failure to disclose, 3) reliance, and 4) damages." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568 (6th Cir. 2013) (quoting *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)) (internal citation and quotation marks omitted). In the Commonwealth, "[c]onstructive fraud arises through some breach of a legal duty which, irrespective of moral guilt, the law would pronounce fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Wood v. Kirby*, 566 S.W.2d 751, 755 (Ky. 1978). For negligent misrepresentation claims in the product-sale context, Kentucky "has called for application of" the Restatement (Third) of Torts: Products Liability (§ 9) standard:

> One engaged in the business of selling or otherwise distributing products who, in connection with the sale of a product, makes a fraudulent, negligent, or innocent misrepresentation of material fact concerning the product is subject to liability for harm to persons or property caused by the misrepresentation.

*Morris*, 536 F. App'x at 567–68 (quoting *Giddings*, 348 S.W.3d at 746 n.11).

Defendants—centrally relying on predictions concerning Illinois and Arizona law from two Ethicon MDL decisions[14]—argue that Plaintiff's fraud and misrepresentation theories merely repackage the failure-to-warn claim in improper attempts to avoid the learned-intermediary doctrine applicable to the strict-liability claim. DE 53 at 5–6. The Court rejects the argument for the following reasons:

*First*—The Court sees no risk of eliding the learned-intermediary rule in fraud claims predicated, as here (at least partly), on affirmative misrepresentations. *See, e.g.*, DE 54-1 at 3 (Ethicon promotional brochure providing resources "[t]o find a doctor in your area who has . . . [implanted] these products"); *id.* at 9 (listing "Essential Product Information for Patient"). The learned-intermediary rule defines the appropriate target for product-linked warnings, "*i.e.*, the health care provider[.]" *Larkin*, 153 S.W.3d at 770. Thus, a fraud claim would only arguably[15] end run the rule if, as in *Huskey*, a plaintiff could not "identify any particular fraudulent statements" and the fraud-based theory thus hinged on a manufacturer's omissions. 29 F. Supp. 3d at 744. That is not this case. Corder alleges that Defendants' marketing materials include "material misrepresentations about the benefits of" the at-issue devices. *See* DE 54 at 6; DE 54-1 ¶ 10 (Corder alleging deceptive claims regarding persistence of complications and frequency of needful intervention).

*Second*—In addition to the § 6(d) learned-intermediary rule, adopted in *Larkin*, the Restatement explicitly provides for liability based on "fraudulent, negligent, or innocent

---

[14] *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 743 (S.D.W. Va. 2014) and *Bellew v. Ethicon, Inc.*, No. 2:13-CV-22473, 2014 WL 6886129, at *5 (S.D.W. Va. Nov. 24, 2014).

[15] Really, the Court doubts an alternatively pleaded theory, with its own set of accompanying mandatory elements, could ever render toothless the learned-intermediary rule in the categorical way Defendants argue. For fraud theories premised on a duty of disclosure, the Court sees no reason why a manufacturer could not endeavor to assert the rule as a challenge to that element.

misrepresentations of material fact concerning the product[.]" Restatement (Third) of Torts: Prod. Liab. § 9. Again, Kentucky's court of last resort has "called for application of" § 9. *Morris*, 536 F. App'x at 567–68 (quoting *Giddings*, 348 S.W.3d at 746 n.11). The commentary to § 9 expressly provides: "This Section does not require the plaintiff to show that the product was defective at the time of sale or distribution[.]" Restatement (Third) of Torts: Prod. Liab. § 9 cmt. d. The Commonwealth's approval of both sections strongly indicates that Kentucky permits concurrent fraud, negligent misrepresentation, and failure-to-warn causes of action. Moreover, Defendants' argument is, despite the stage of presentation, essentially a challenge to Corder's pleading strategy—it, at least, relies on no extra-pleading material that would have prevented the same assertion via Rule 12 motion. Kentucky and federal law expressly permit a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Ky. R. Civ. P. 8.05(2) (same, in substance).[16] The bar on duplicative *recovery*, of course, persists.

*Third*—The defense offers nothing showing that when Kentucky adopted the learned-intermediary rule, the state also intended to obliquely foreclose other well-established tort theories.[17] Cases applying Kentucky law suggest otherwise. *See, e.g.*, *Estate of DeMoss by & through DeMoss v. Eli Lilly & Co.*, 234 F. Supp. 3d 873, 881 (W.D. Ky. 2017) ("Under Kentucky

---

[16] *Cf. LV Ventures, LLC v. Schott*, No. 2011-CA-000473-MR, 2012 WL 5039235, at *4 (Ky. Ct. App. Oct. 19, 2012) ("[A] party may alternatively plead both a fraudulent inducement claim and a breach of contract claim in his or her complaint; however, a party may not recover upon both claims.").

[17] *Cf.* Restatement (Third) of Torts: Prod. Liab. § 9 cmt. e ("The rule stated in this Section provides a remedy in tort in many cases in which a remedy for breach of express warranty or implied warranty of fitness for particular purpose is also available to the plaintiff. **Breach of these warranties provides an independent basis of liability under the Uniform Commercial Code and may be combined in the same case with a claim for misrepresentation**." (emphasis added)).

law, a plaintiff can advance both a strict-liability claim and a negligence claim against the manufacturer of a product for injury suffered by that product." (quotation marks omitted)) (collecting cases). This makes sense, as distinct torts generally target distinct wrongs. For instance, "[s]trict liability typically focuses on the condition of the product while a negligence inquiry examines whether the manufacturer exercised the proper degree of care to protect against foreseeable dangers when manufacturing the product for the consumer." *Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 712 (W.D. Ky. 2013). Again, Defendants' piebald treatment of four distinct claims does the Rule 56 effort no favors. Fraud, constructive fraud, and fraudulent concealment have discrete foci. Negligent misrepresentation relies on a distinct mens rea. Ethicon develops no argument to explain why Kentucky might have intended to obviate any, much less all, of these venerable theories in service to a unique feature of strict liability doctrine. On these cascading bases, the Court denies summary judgment on Counts VI–IX.[18]

### *Breaches of Express and Implied Warranties*

Next, Defendants contend that Corder's express and implied warranty claims (Counts XI & XII) are untimely under the applicable four-year limitations period, *see* KRS 355.2-725, and/or fail for lack of privity. *See* DE 53 at 6–7. Plaintiff argues that her claims did not accrue until a physician's 2016 examination confirmed a problem with Ethicon's products. DE 54 at 7. And, though acknowledging that a successful warranty claim would require proof of privity, Corder argues that the Ethicon pamphlet—again, supplied by Dr. Bush, *see* Corder Dep. at 145—establishes privity of contract with Defendants. *See* DE 54 at 8. Ethicon has the better of both arguments.

---

[18] Finally, of course, the Court does not treat the learned-intermediary rule as dispositive anyway.

<u>First</u>—The warranty claims are untimely.

> Kentucky law provides that a buyer may assert a breach of warranty action within four years of "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." KRS 355.2-725(2).

*Newberry v. Serv. Experts Heating & Air Conditioning, LLC*, 806 F. App'x 348, 362 (6th Cir. 2020); *see also* KRS 355.2-725(2) ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."). Thus, for warranty claims, KRS 355.2-725(2) sets up two possible accrual scenarios. Typically, a breach occurs, and the claim accrues on tender of delivery, regardless of the recipient's knowledge. The lone exception, where accrual awaits actual or constructive breach discovery, requires a warranty that "explicitly extends to future performance[.]" KRS 355.2-725(2).

Plaintiff claims the latter accrual rule based on pamphlet language stating that "98% of women treated with GYNECARE TVT are still dry and report significantly less leakage seven years after treatment." *See* DE 54-1 at 8. Defendants first contend that this is no warranty. Under Kentucky law, a seller may create express warranties in various ways:

> Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

KRS 355.2-313(1)(a) & (b). While a seller need neither "use formal words such as 'warrant' or 'guarantee'" nor intend "to make a warranty," an "affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Id.* at (2); *see also Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982) ("Every statement made by a seller, however, does not create an express warranty.").

Ultimately, "[t]he test is 'whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment.'" *Overstreet*, 669 F.2d at 1290–91 (quoting *Wedding v. Duncan*, 220 S.W.2d 564, 567 (Ky. 1949)). The subject statement does strike the Court as, at least arguably, a warranty of some kind. *See also id.* (Typically, "[t]he trier of fact must determine whether the circumstances necessary to create an express warranty are present in a given case."). The statement's character is clearly factual and it concerns a topic about which a buyer could not reasonably be expected to possess independent knowledge.

However, Defendants' second argument—that the cited brochure verbiage does not explicitly extend to future performance—hits the mark.

> A warranty of future performance of a product must expressly provide some form of guarantee that the product will perform in the future as promised. The U.C.C. provides the exception in § 2–275(2) because without it, a situation could arise where a buyer, after tender of delivery, could be awaiting such future performance only to have the four year limitation period expire and the future performance promised subsequently fail to occur, thereby leaving the buyer without legal recourse upon such an expressed warranty. . . . . [A] warranty for future performance guarantees the performance of the product itself for a stated period of time.

*Elec. Ins. Co. v. Freudenberg-Nok, Gen. P'ship*, 487 F. Supp. 2d 894, 904 (W.D. Ky. 2007) (citation omitted). Further,

> Most courts have been very harsh in determining whether a warranty explicitly extends to future performance. Emphasizing the word "explicitly," they have ruled that there must be specific reference to a future time in the warranty. As a result of this harsh construction, most express warranties cannot meet the test and no implied warranties can since, by their very nature, they never "explicitly extend to future performance."

*Standard All. Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978) (collecting cases), *cert. denied*, 99 S. Ct. 2032 (1979); *id.* at 820 (discussing policy considerations that make it "acceptable to bar implied warranty claims brought more than a specified number of years after

the sale"). "Under this majority rule, therefore, courts construe the term 'explicit' to mean that the warranty of future performance must be unambiguous, clearly stated, or distinctly set forth." *W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc., a Div. of Reichhold Chemicals, Inc.*, 23 F.3d 1547, 1550 (9th Cir. 1994) (quotation marks omitted) (collecting numerous cases).

For instance, the Third Circuit found that a defendant's "boast" in "sales literature" that "many roofs [it] supplied" were "still performing satisfactorily after more than forty (40) years" of use was not an "explicit extension[ ] of any warranty to cover the future performance of the product[.]" *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 291 (3d Cir. 1980). More closely analogous to the instant case is *Tolen v. A.H. Robins Co., Inc.*, in which the district court concluded that "a brochure [defendant] provided to physicians to give their patients" providing that "[s]ome women have been effectively protected by the same I.U.D. for five years or longer" lacked the specificity regarding <u>future</u> performance needed to justify delayed accrual. 570 F. Supp. 1146, 1153 (N.D. Ind. 1983). Along the same lines is *Zawadzki v. Ethicon, Inc.*:

> [T]he statement that testing of the sutures has shown that they maintain 100% of their strength for twenty-eight days does not create an explicit extension. Like the "forty year" roof in *Jones & Laughlin*, this is merely a statement of past performance by goods identical to the one in question. There is nothing in the statement that is sufficiently unambiguous and clear to serve as an explicit extension to future performance of the sutures that were put into [plaintiff's] neck[.]

No. CIV. A. 92-6453, 1994 WL 77350, at *6 (E.D. Pa. Mar. 11, 1994).

With this persuasive—*i.e.*, primarily non-binding—precedent in mind, the Court considers the at-issue brochure. What is the substance of the express factual affirmation? That a historical survey of TVT recipients showed that 98% benefitted seven years after implantation. Certainly, there is an **implicit** suggestion in this representation that a future recipient could hope to receive like results. Yet, the future-performance exception requires an **explicit** forward-looking guarantee;

21

an implied representation will not do. *See In re Hardieplank Fiber Cement Siding Litig.*, 284 F. Supp. 3d 918, 949 (D. Minn. 2018) ("[S]tatements concerning product longevity do not comply with the requirement of a 'specific reference to a future time' that would create a warranty of future performance."); *cf. Barnes v. Cmty. Tr. Bank*, 121 S.W.3d 520, 524 (Ky. Ct. App. 2003) (discussing the "sound policy of the Uniform Commercial Code to provide finality within a reasonable time period so that buyers and sellers may proceed with their affairs").[19] Thus, the standard rule of accrual upon delivery—which, in the medical device context, courts deem "[t]he date of implantation"—applies. *Cutter*, 2020 WL 109809, at *9. Dr. Bush implanted Ethicon's products on March 30, 2007. DE 5 at 6. Corder's November 16, 2016, complaint, as a warranty case, came far too late.

Alternatively, the warranty claims also fail for lack of privity. In Kentucky, "privity remains a prerequisite for products liability claims based on warranty[.]" *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006) (citing *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985)); *see also House v. Bristol-Myers Squibb Co.*, No. 3:15-CV-00894-JHM, 2017 WL 55876,

---

[19] Even if the pamphlet claim could conceivably be interpreted as <u>explicitly</u> guaranteeing future performance, the Court notes that Corder explicitly rejected urinary incontinence as a reason that she chose Ethicon's products. *See* DE 5 at 6, 17. That topic is clearly the focus of the subject brochure representation. *See* DE 54-1 at 8. An Ethicon representation not part of Corder's calculus in consummating the subject bargain is no ground to extend the limitations period for claims concerning separate allegedly breached guarantees. Moreover, given Plaintiff's long-held suspicion that Ethicon was at fault for complications beginning "directly after" her surgery, DE 5 at 8, constructive discovery would also likely bar the claim. At minimum, Corder presents no proof that her urinary incontinence symptoms (*i.e.*, evidence from which a reasonable product recipient could discern that the alleged guarantee of future dryness was empty) were latent or otherwise undiscoverable, with diligence, through 2014. *Cf. Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1982) ("Does the statute start to run when the surgery patient discovers the sponge or when an attorney tells the patient that legal action lies against the surgeon? Obviously the answer must be with the discovery that a wrong has been committed and not that the party may sue for the wrong."). And, Plaintiff entirely fails to explain why she could not, if diligently pursuing her rights, have discovered whether an alleged promise for 7-years free from urinary incontinence was broken until receipt of a physician's confirmation.

at *6 (W.D. Ky. Jan. 4, 2017) ("Under Kentucky law, privity of contract is an essential element of

a claim for breach of an implied warranty."). "As a rule, privity of contract does not extend beyond

the buyer-seller setting, and an intervening purchaser destroys privity." *Gaunce v. CL Med. Inc.*,

No. 5:14-346-DCR, 2015 WL 893569, at *2 (E.D. Ky. Mar. 2, 2015) (citing *Compex*, 209 S.W.3d

at 465). "If liability is based on sale of the product, it can be extended beyond those persons in

privity of contract only by some provision of the U.C.C. as adopted in Kentucky." *Williams*, 695

S.W.2d at 413. And, the "only provision of the [Kentucky] U.C.C. extending breach of warranty

in injury cases is KRS 355.2-318[.]" *Id.* Plaintiff did not purchase the at-issue devices directly

from Defendants,[20] and the lone non-privity exception[21] does not help Corder here. Thus, the

absence of privity forecloses the warranty claims. *See Waterfill v. Nat'l Molding Corp.*, 215 F.

App'x 402, 405 (6th Cir. 2007) (Under Kentucky law, "claims for breach of express or implied

---

[20] Plaintiff's response includes a conclusory direct purchase assertion. *See* DE 54 at 9. However, Corder cites no supportive proof and counsel argument is not evidence. Moreover, Plaintiff expressly denied communicating with either Defendant or any representative of those entities. *See* Corder Dep. at 53. Plaintiff implies that she purchased the at-issue devices from Ethicon and provided them to Dr. Bush for implantation. To show a genuine dispute as to this doubtful chain of events, Corder needed to offer some proof. She did not. Two additional points cast further doubt on Corder's buyer-seller allegation. First, Corder asserts direct purchase only in discussing the KCPA privity requirement. *See* DE 54 at 9. Plaintiff's resort, for warranty claim purposes, to pamphlet representations as proof of privity would have been entirely unnecessary if the parties shared a direct purchasing relationship. Second, Corder failed to oppose—indeed, as the Court reads the briefing, implicitly conceded—Ethicon's assertion of learned-intermediary rule application for the failure-to-warn claim. *See* DE 54 at 3–5. This tack does not square with Corder's subsequent assertion that the purchase occurred without an intermediary. *Cf. Larkin*, 153 S.W.3d at 762–63 ("Obviously, the rule applies only to prescription drugs and devices and not to over-the-counter products.").

[21] "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section." KRS 355.2-318. Corder does not claim that she shared any relevant connection to Dr. Bush, the undisputed purchaser.

warranties may proceed only where there is privity between the parties."). Plaintiff's contrary contentions are unavailing.

Corder insists that the fact that her receipt and review of the pamphlet containing the alleged warranties established privity. *See* DE 54 at 8. In other states that have "adopted the broader alternative versions of Section 2–318 of the Uniform Commercial Code, breach of warranty may be extended 'to any natural person who may reasonably be expected to use, consume or be affected by the goods.'" *Snawder v. Cohen*, 749 F. Supp. 1473, 1481 (W.D. Ky. 1990) (citation omitted). "That, however, is not the law in Kentucky." *Id.* "The Kentucky legislature chose to adopt the least protective of the three alternatives for § 2-318 proposed by the Code's drafters." *Puckett v. Comet Mfg. Corp.*, 892 F.2d 80 (table) (6th Cir. 1989); *see McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999) ("[T]he Legislature was aware, when enacting our version of the Uniform Commercial Code, that other alternatives to the statute existed which extended the concept of privity to allow a broader range of injured persons to assert warranty theories of recovery."). And, "[t]he courts in Kentucky have chosen not to extend the seller's warranty to all reasonably foreseeable users, despite the invitation in the commentary to § 2-318." *Id.* As the Kentucky Court of Appeals explained:

> "[C]ommercial sales law is statutory," and our Legislature chose to limit actions for breach of warranty as provided in KRS 355.2–318. It is not the function of the courts to extend the concept of privity to include those whom the Legislature has not seen fit to protect.

*McLain*, 16 S.W.3d at 327 (quoting *Williams*, 695 S.W.2d at 414) (footnote omitted); *see also Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1021 (E.D. Ky. 2015) ("The Kentucky Supreme Court has repeatedly refused to extend warranties beyond those in privity.").

Moreover, and though—as Corder notes, DE 64 at 2—a couple of outlier decisions[22] have applied non-statutory privity exceptions,

> [T]he Court is reluctant to extend principles of Kentucky law outside the bounds set by the legislature. . . . "[T]he scope of warranty protections in commercial transactions is a matter of public policy that has been expressly decided by the [Kentucky] General Assembly." *Compex[,* 209 S.W.3d at 465) (citing *Fulmer,* 695 S.W.2d at 414). Any extension, modification, or repeal of the privity requirement "is a question left to the legislature." *Id.*

*Taylor*, 130 F. Supp. 3d at 1023. The Kentucky Supreme Court, as the Sixth Circuit recently reiterated, has not waivered on the stringency of its privity requirement and has interpreted KRS 355.2-318 "to mean what it says; only the original purchaser and the members of her household mentioned in the statute may maintain a cause of action for breach of warranty." *Yonts v. Easton Tech. Prod., Inc.*, 676 F. App'x 413, 420 (6th Cir. 2017). Because "Kentucky requires privity of contract or a direct buyer-seller relationship for breach of warranty claims[,]" and Corder has neither relationship with Defendants, the warranty claims also fail on this basis. *Taylor*, 130 F. Supp. 3d at 1021. In sum, Corder's lacks the predicate relationship with Defendants to bring warranty claims that are, in any event, time barred. Ethicon gets summary judgment on Counts XI & XII.

*Kentucky Consumer Protection Act*

Defendants similarly contend that Corder's KCPA claim (Count XIII) fails for lack of privity and/or is time barred. Plaintiff's rebuttal tracks the warranty rejoinder. The Court, though coming down only on the statute of limitations, finds summary judgment warranted.

Kentucky declares unlawful: "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" where "unfair" means "unconscionable." KRS 367.170.

---

[22] *See, e.g.*, *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 739 (W.D. Ky. 2013).

The Commonwealth further provides a private cause of action for "[a]ny person who purchases . . . goods . . . primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal" as a result of a KRS 367.170 violation. KRS 367.220(1). A buyer-seller or contractual relationship, *i.e.*, privity, is generally required. *Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992) ("The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act. "); *see also id.* ("[A] subsequent purchaser may not maintain an action against a seller with whom he did not deal[.]"). However, unlike in the warranty context, Kentucky appellate courts have implied—and, more importantly, the Kentucky Supreme Court has not rejected—an exception for a warranty made "for the benefit of the subsequent purchaser." *Id.* This expanded approach, perhaps, makes sense in the context of a scheme enacted "to give Kentucky consumers the broadest possible protection for allegedly illegal acts." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988). Federal district courts are sharply divided concerning the viability of this exception.[23] Because the KCPA claim fails whether or not the Kentucky Supreme Court would sanction such a claim based on an end-recipient directed

---

[23] *Compare Naiser*, 975 F. Supp. 2d at 743 (recognizing an exception for a defendant that has "made valid express warranties for Plaintiffs' benefit"), *Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 750–51 (W.D. Ky. 2014) (following *Naiser*), *and Miller v. Coty, Inc.*, No. 3:14-cv-00443, 2018 WL 1440608, at *14 (W.D. Ky. Mar. 22, 2018), *with Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 962–63 (E.D. Ky. 2019) (rejecting the exception and collecting supportive cases). Two (unpublished) Sixth Circuit cases have distinguished, without expressly rejecting, the *Naiser* exception. *See Yonts*, 676 F. App'x at 420–21; *PNC Bank, N.A. v. Merenbloom*, No. 15-6361, 2017 WL 3973962, at *3 (6th Cir. June 16, 2017).

warranty (and, on this point, reasonable minds have differed),[24] the Court sees no need to premise its ruling on privity.

The applicable 2-year statute of limitations bars the KCPA claim. *See* KRS 367.220(5) (requiring, in relevant part, KCPA claimants to bring suit "within two (2) years after the violation of KRS 367.170"). The "discovery rule" does not apply. *See Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-000801-MR, 2004 WL 2011375, at *4 (Ky. Ct. App. Sept. 10, 2004) ("In enacting KRS 367.220(5), the Kentucky legislature did not state any person bringing an action under this section must bring such action within two (2) years from the date of the violation of KRS 367.170 or from the date when the cause of action was, or reasonably should have been, discovered." (alterations and quotation marks omitted)). Indeed, state precedent calls for "strict application of KRS 367.220(5)[.]" *Id.* at *3. Thus, a KCPA action must be filed within 2 years of the alleged "[unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce[.]" KRS 367.170.

For instance, one Kentucky court reasoned that a claim premised on an allegedly false assurance, contained in an admission agreement, that the defendant long-term care facility would "assist" the admittee "in applying for Medicaid benefits" accrued upon a patient's "entry into the facility"—not, *e.g.*, when the plaintiff died with the promise unfulfilled. *Estate of Laird v. Mills Health & Rehab Ctr., Inc.*, No. 2017-CA-000288-MR, 2019 WL 2406380, at *3 (Ky. Ct. App. June 7, 2019), *review denied* (Dec. 13, 2019). Here, Plaintiff fails to allege any deceitful act or

---

[24] If pressed, the Court—given the Circuit's description of *Naiser* as not only distinguishable but also "unpersuasive[,]" *Yonts*, 676 F. App'x at 420—would likely side with the evident majority and find lack of privity, as discussed in the warranty context, fatal to the KCPA claim. *See Simpson*, 397 F. Supp. 3d at 963 n.10 (collecting cases); *see also Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 546 (Ky. Ct. App. 2013) ("Claims may only be brought under the KCPA by individuals who personally purchase goods or services from a merchant.").

practice "in the conduct of any trade or commerce" after implantation of the subject devices on March 30, 2007. Under existing law,[25] any KCPA claim accrued no later than that date. Thus, Plaintiff's claim was time-barred long before the November 16, 2016, complaint.

One final note on this topic. The Kentucky Supreme Court has yet to affirmatively interpret the KCPA limitations provision. Thus, the Court relies on available guidance. Nonetheless, the Court acknowledges that the accrual scheme adopted by the Commonwealth's intermediate appellate (and federal district)[26] courts may result in some seemingly absurd consequences. For instance, a seller that falsely assures a purchaser that a product would last for 30 years knowing full well that it would hold up for five years (but no more than ten) would, under the extant accrual scheme, seemingly be immune to KCPA repercussions. That is, a plaintiff would be hard pressed to prove such a representation was deceptive before a KCPA claim became time-barred.[27] [Indeed, Schrödinger might posit that the statement was not, to the world, as a matter of reality (as opposed to probability), deceptive until it was observably false.][28] In the context of a sweeping remedial scheme, such a result is logically discomforting. Thus, the Court entertains the possibility that a

---

[25] The Court is tasked with applying substantive state law consistent with the state high court's binding rulings. *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016). In the absence of such a controlling decision, federal courts "must predict how that court would rule, by looking to 'all available data.'" *Id*. State appellate decisions "should not[,]" absent persuasive data that the state supreme court would disagree, "be disregarded[.]" *Id.*

[26] *See, e.g.*, *Petrey v. Ethicon, Inc.*, No. 5:19-CV-298-DCR, 2019 WL 5295185, at *2 (E.D. Ky. Oct. 18, 2019) (finding that KCPA claim accrued on the date of surgery).

[27] This is more characteristic of a statute of repose, not a statute of limitations. *See Dodd v. Dyke Indus., Inc.*, 518 F. Supp. 2d 970, 973 (W.D. Ky. 2007) (A limitations period that "potentially bars the plaintiff's suit before the cause of action arises" is "properly characterized as a statute of repose[.]" (quotation marks and alterations omitted)).

[28] Schrödinger, Erwin, "Die gegenwärtige Situation in der Quantenmechanik," *Naturwissenschaften* 23, 807–812 (1935), *translated in* Trimmer, John D., "The Present Situation in Quantum Mechanics: A Translation of Schrödinger's 'Cat Paradox' Paper," 124 *Proceedings of the American Philosophical Society* 5, 323–38 (1980), *available at* www.jstor.org/stable /986572 (last visited July 20, 2020).

"violation" of KRS 367.170 may not occur until some event renders the subject act or practice demonstrably dishonest. *Cf. Berry v. Chrysler Corp.*, 150 F.2d 1002, 1004 (6th Cir. 1945) (noting "the general rule that the statute does not begin to run until the tort is complete"); *Louisville Tr. Co. v. Johns-Manville Prod. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979) ("Courts have felt that the injured party should be allowed to have his day in court when his injury was of an inherently unknowable nature." (quotation marks omitted)); *Dodd*, 518 F. Supp. 2d at 973 ("a limitations period generally begins to run when facts exist that authorize one party to maintain an action against another") (citation omitted). This approach would not require resort to the rejected premise of accrual upon actual or constructive discovery. Instead, delayed accrual would extend only until facts—detected or undetected—exist that would permit demonstrating that a representation was factually false or misleading.

Here, even this hypothetical approach would not help Plaintiff. Her claims are based on "nine years" of "numerous complications[.]" DE 54 at 2. Again, Corder's symptoms arose "directly after" her surgery and she long "suspected" Ethicon was to blame. DE 5 at 8. The Court sees, and Corder identifies, no proof of an allegedly unconscionable, misleading, or deceptive representation that could not have been so proven before November 16, 2014—*i.e.*, two years before Plaintiff filed suit, but more than 7-years after implantation. In sum, any KCPA claim based on representations linked to the 2007 surgery is time barred, and the Court dismisses Count XIII on that basis.

*Unjust Enrichment – Count XV*

Neither party discusses any proof related to the unjust enrichment claim.[29] Defendants set forth the claim elements and baldly conclude: "Discovery is complete and Plaintiff has failed to identify any evidence to support Count XV." DE 53 at 8–9. Plaintiff responds with a 2.5-page block quote discussion of the *Celotex* concurring and dissenting opinions from *Moore's Federal Practice*. DE 54 at 10–11. Confronting dueling flawed efforts to address this claim, the Court finds that the balance tips procedurally in favor of the non-movant, Corder.

As Defendants note, the *Celotex* majority did not adopt the concurring and dissenting justices' view that "[i]t is not enough to move for summary judgment . . . with a conclusory assertion that the plaintiff has no evidence to prove his case[.]"[30] Nevertheless, the Court, speaking through Justice Rehnquist, did state:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

106 S. Ct. at 2553. As the Sixth Circuit has put it: "The question on summary judgment is **whether the moving party has demonstrated** that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009) (emphasis added); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the **movant shows** that there is no

---

[29] In Kentucky: "For a party to prevail under the theory of unjust enrichment, [she] must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009) (citing *Guarantee Electric Co. v. Big Rivers Electric Corp.*, 669 F. Supp. 1371, 1380–81 (W.D. Ky. 1987)).

[30] 106 S. Ct. at 2555 (White, J., concurring); *see also id.* at 2557 ("Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient.") (Brennan, J., dissenting).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (emphasis added)). Per Rule 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) **citing** to particular parts of materials in the record . . . or (B) **showing** that an adverse party cannot produce admissible evidence to support the fact." *Id.* (emphasis added). The Court hews to this in its formulation of the standard.

Defendants do not cite a single record entry and hardly "show[ ]" that Plaintiff "cannot produce admissible evidence to support" any claim element. Instead, the defense flatly contends that "Plaintiff has provided . . . no evidence" or "failed to identify any evidence to support Count XV[.]" DE 53 at 8–9. Ethicon misorders cart and horse. Had Defendants mustered more than a conclusory argument, Plaintiff's failure to provide or identify "specific facts showing a triable issue" might have presented a problem for the unjust enrichment claim. *Matsushita*, 106 S. Ct. at 1356. Yet, to trigger Corder's duty on that topic, the defense had to "carr[y] its burden under Rule 56(c)[.]" *Id.*[31] Because Defendants' undeveloped contentions do not satisfy the Rule 56 movant's initial obligation, the Court denies summary judgment on Count XV.[32]

---

[31] *See also Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991) ("[U]nder Rule 56(c), a party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact. Although subsequent Supreme Court cases have redefined the movant's initial burden . . . the requirement that the movant bears the initial burden has remained unaltered." (citations omitted)); Advisory Committee Note on 1963 Am. to Fed. R. Civ. P. 56(e) (explaining that the amendment was not "designed to affect the ordinary standards applicable to the summary judgment motion" and that "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented").

[32] Defendants, in reply, attempt an eleventh-hour pivot to argument concerning privity. *See* DE 55 at 5. The Court declines substantive analysis of this tardily (and thus improperly) raised contention. *See Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010) ("Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court[.]"). Defendants did not raise this theory in the precipitating motion and thus gave Plaintiff no reason—indeed, denied her a fair opportunity—to address the contention.

IV.    **CONCLUSION**

For the reasons, to the extent, and on the terms stated, the Court **GRANTS IN PART AND DENIES IN PART** DE 52. The Court dismisses Counts II, IV, and XI–XIII. Corder may proceed with the remaining claims.

This the 21st day of July, 2020.

Signed By:

_Robert E. Wier_

**United States District Judge**